## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| WILLIAM DAVISON, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>STEMLINE THERAPEUTICS, INC., IVAN BERGSTEIN, RON BENTSUR, DARREN CLINE, ALAN FORMAN, MARK SARD, KENNETH ZUERBLIS, BERLIN-CHEMIE AG, MERCURY MERGER SUB, INC., and A. MENARINI – INDUSTRIE FARMACEUTICHE RIUNITE S.R.L.,<br><br>Defendants. | X<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. _____

**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE SECURITIES EXCHANGE ACT OF 1934**

**JURY TRIAL DEMAND**

Plaintiff William Davison ("Plaintiff"), individually and on behalf of all others similarly situated, alleges the following upon information and belief, including investigation of counsel and review of publicly-available information, except as to those allegations pertaining to Plaintiff, which are alleged upon personal knowledge:

## NATURE OF THE ACTION

1. Plaintiff brings this class action on behalf of the public stockholders of Stemline Therapeutics, Inc. ("Stemline" or the "Company") against Stemline's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(e) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14d-9, 17 C.F.R. 240.14d-9, arising out of the Board's attempt to sell the Company to A. Menarini – Industrie Farmaceutiche Riunite S.r.l. through its wholly owned subsidiary Berlin-Chemie AG and its wholly owned subsidiary Mercury Merger Sub, Inc. (collectively "Menarini").

1

2.     Defendants have violated the above-referenced sections of the Exchange Act by causing a materially incomplete and misleading solicitation statement (the "14D-9") to be filed with the United States Securities and Exchange Commission ("SEC") on May 12, 2020. The 14D-9 recommends that Stemline stockholders tender their shares in favor of a proposed transaction (the "Proposed Transaction") whereby Stemline is acquired by Menarini. The Proposed Transaction was first disclosed on May 4, 2020, when Stemline and Menarini announced that they had entered into a definitive merger agreement (the "Merger Agreement") pursuant to which Menarini will acquire all of the outstanding shares of common stock of Stemline for $11.50 in cash and one contingent value right valued at $1.00 per share (the "Merger Consideration"). The deal is valued at approximately $677 million and is expected to close in the second quarter of 2020.

3.     The 14D-9 is materially incomplete and contains misleading representations and information in violation of Sections 14(e) and 20(a) of the Exchange Act. Specifically, the 14D-9 contains materially incomplete and misleading information concerning the sales process, financial projections prepared by Stemline management, and the financial analyses conducted by PJT Partners LP ("PJT") and BofA Securities, Inc. ("BofA"), Stemline's financial advisors.

4.     For these reasons, and as set forth in detail herein, Plaintiff seeks to enjoin defendants from taking any steps to consummate the Proposed Transaction, including filing any amendment to the 14D-9, unless and until the material information discussed below is included in any such amendment or otherwise disseminated to Stemline's stockholders. In the event the Proposed Transaction is consummated without the material omissions referenced below being remedied, Plaintiff seeks to recover damages resulting from the defendants' violations.

**PARTIES**

5.     Plaintiff is, and has been at all relevant times, the owner of shares of common stock

of Stemline.

6.    Defendant Stemline is a corporation organized and existing under the laws of the State of Delaware. The Company's principal executive offices are located at 750 Lexington Avenue, Eleventh Floor, New York, New York 10022. Stemline common stock trades on NASDAQ under the ticker symbol "STML."

7.    Defendant Ivan Bergstein, M.D. has been President, Chief Executive Officer ("CEO") and a director of the Company and Chairman of the Board since 2003.

8.    Defendant Ron Bentsur has been a director of the Company since 2009.

9.    Defendant Darren Cline has been a director of the Company since 2018.

10.    Defendant Alan Forman has been a director of the Company since 2015.

11.    Defendant Mark Sard has been a director of the Company since 2018.

12.    Defendant Kenneth Zuerblis has been a director of the Company since 2012.

13.    Defendants Bergstein, Bentsur, Cline, Forman, Sard and Zuerblis are collectively referred to herein as the "Board."

14.    Defendant A. Menarini – Industrie Farmaceutiche Riunite S.r.l. is an Italian company with its headquarters located at Via Dei Sette Santi 1/3 50131 Florence, Italy.

15.    Defendant Berlin-Chemie AG is a German company and wholly owned subsidiary of A. Menarini – Industrie Farmaceutiche Riunite S.r.l. Berlin-Chemie AG has its headquarters located at Glienicker Weg 125, 12489 Berlin, Germany.

16.    Defendant Mercury Merger Sub, Inc. is a Delaware corporation and is a wholly owned subsidiary of Berlin-Chemie AG.

**JURISDICTION AND VENUE**

17.    This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange

Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Section 14(e) and 20(a) of the Exchange Act.

18.     Personal jurisdiction exists over each defendant either because the defendant conducts business in or maintains operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

19.     Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391, because: (i) a significant amount of the conduct at issue took place and had an effect in this District; and (ii) Stemline is incorporated in this District.

## CLASS ACTION ALLEGATIONS

20.     Plaintiff brings this action on his own behalf and as a class action on behalf of all owners of Stemline common stock and their successors in interest and/or their transferees, except defendants and any person, firm, trust, corporation or other entity related to or affiliated with the defendants (the "Class").

21.     This action is properly maintainable as a class action for the following reasons:

(a)     The Class is so numerous that joinder of all members is impracticable. As of April 30, 2020, Stemline had approximately 52.4 million shares outstanding.

(b)     Questions of law and fact are common to the Class, including, inter alia, the following:

(i)     Whether defendants have violated Section 14(e) of the Exchange Act;

(ii)     Whether the Individual Defendants have violated Section 20(a) of the Exchange Act;

(iii)    Whether Plaintiff and other members of the Class would suffer irreparable injury were defendants to file an amendment to the 14D-9 with the SEC that does not contain the material information referenced above and the Proposed Transaction is consummated as presently anticipated;

(iv)    Whether Plaintiff and the other members of the Class would be irreparably harmed were the transaction complained of herein consummated; and

(v)     Whether the Class is entitled to injunctive relief or damages as a result of Individual Defendants' wrongful conduct.

(c)     Plaintiff is committed to prosecuting this action, is an adequate representative of the Class, and has retained competent counsel experienced in litigation of this nature.

(d)     Plaintiff's claims are typical of those of the other members of the Class.

(e)     Plaintiff has no interests that are adverse to the Class.

(f)     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications for individual members of the Class and of establishing incompatible standards of conduct for the party opposing the Class.

(g)     Conflicting adjudications for individual members of the Class might as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.

(h)    Plaintiff anticipates that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## SUBSTANTIVE ALLEGATIONS

### A. Background of the Company and the Proposed Transaction

22.    Stemline is a biopharmaceutical company that focuses on oncology drugs. The Company has one drug, ELZONRIS, that has been approved by the U.S. Food and Drug Administration. ELZONRIS is used to treat blastic plasmacytoid dendritic cell neoplasm. Stemline is also assessing ELZONRIS for use in chronic myelomonocytic leukemia, myelofibrosis, multiple myeloma and acute myeloid leukemia. The Company is developing other potential drug candidates that target advanced solid tumors and genetically-defined malignancies.

23.    On May 3, 2020, the Company entered into the Merger Agreement with Menarini.

24.    According to the press release issued on May 4, 2020 announcing the Proposed Transaction:

**Menarini Group to Acquire Stemline Therapeutics in Transaction Valued at Up to $677 Million**

- *Acquisition of Stemline establishes Menarini's presence in the U.S. biopharmaceutical oncology market*

- *Menarini will support further development of Stemline's ELZONRIS® and enable global expansion by leveraging its commercial infrastructure in Europe and other ex-U.S. geographies*

- *Total potential consideration of $12.50 per share comprising $11.50 cash and $1.00 Contingent Value Right (CVR)*

FLORENCE and NEW YORK – May 4, 2020 – Menarini Group, a privately held Italian pharmaceutical and diagnostics company, and Stemline Therapeutics Inc., a commercial-stage biopharmaceutical company focused on the development and commercialization of novel oncology therapeutics, (Nasdaq: STML) today announced a definitive agreement under which Menarini Group will acquire Stemline in a transaction valued up to $677 million.

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per share, consisting of an upfront payment of $11.50 in cash and one non-tradeable Contingent Value Right (CVR) that will entitle each holder to an additional $1.00 in cash per share upon completion of the first sale of ELZONRIS in any EU5 country after European Commission approval. Stemline launched ELZONRIS for the treatment of blastic plasmacytoid dendritic cell neoplasm (BPDCN) in adult and pediatric patients, two years or older, following the approval by the United States Food and Drug Administration in December 2018. ELZONRIS is a novel targeted therapy directed to the interleukin-3 (IL-3) receptor-α (CD123).

With the support of Menarini's infrastructure, Stemline will continue its efforts to develop additional applications of ELZONRIS to serve the unmet needs of patients suffering from difficult to treat diseases and cancers. Following its strong U.S. launch of ELZONRIS, Stemline will benefit from Menarini's experience in bringing products to markets in Europe and emerging markets as it prepares for a successful international launch upon receipt of regulatory approval in ex-U.S. territories.

Elcin Barker Ergun, CEO of Menarini Group, commented, "Stemline is an excellent fit for Menarini, enabling us to expand our presence in the U.S. with an established biopharmaceutical company focused on developing oncology therapeutics. Through this acquisition, we will continue to strengthen our portfolio and pipeline of oncology assets and deliver novel therapies around the world. We look forward to uniting together with the Stemline team to advance our shared mission of serving patients."

Ivan Bergstein, M.D., Chairman, CEO and Founder of Stemline, said, "Joining Menarini represents a unique opportunity for Stemline to advance the commercialization of ELZONRIS across the globe and to accelerate the development of our pipeline of oncology assets. We have transitioned Stemline over the last several years into an established commercial-stage operation with a novel treatment, a growing pipeline and a strong foundation. We are excited to be combining with a like-minded organization in Menarini, in a transaction that will deliver immediate and significant cash value to our shareholders, while also allowing our shareholders to participate in the future upside of ELZONRIS's European launch. We look forward to working closely together on our unified goal of helping and delivering hope to patients worldwide."

**Transaction Terms**

Under the terms of the agreement, a wholly owned subsidiary of the Menarini Group will commence a tender offer for all outstanding shares of Stemline, whereby Stemline shareholders will be offered a total potential consideration of $12.50 per

share, consisting of an upfront payment of $11.50 per share in cash, along with one non-tradeable Contingent Value Right (CVR).

Under the terms of the non-tradeable CVR, Stemline shareholders will be paid an additional $1.00 per share upon completion of the first sale for use or consumption by the general public of ELZONRIS in BPDCN in any one of the following countries: United Kingdom, France, Spain, Germany, or Italy after receiving approval by the European Commission of a Marketing Authorization Application (MAA), through the centralized procedure, on or before December 31, 2021. There can be no assurance such approval or commercialization will occur or that any contingent payment will be made.

Menarini will acquire any shares of Stemline not tendered into the tender offer through a second-step merger for the same per share consideration as will be payable in the tender offer. The merger will be effected as soon as practicable after the closing of the tender offer.

The transaction has been unanimously approved by the Boards of Directors of both companies. Stemline's Board of Directors recommends to shareholders of Stemline that they tender their shares into the tender offer. The transaction is expected to close in the second quarter of 2020, subject to customary closing conditions, including the tender of more than 50% of all shares of Stemline outstanding at the expiration of the offer and receipt of Hart-Scott-Rodino clearance. The terms and conditions of the tender offer will be described in the tender offer documents, which will be filed with the U.S. Securities and Exchange Commission.

Menarini expects to fund the acquisition through existing cash resources.

**B. Stemline's Officers Stand to Receive Benefits Unavailable to the Class**

25.     The 14D-9 acknowledges that the Company's executive officers have interests in the merger that may differ from those of the stockholders and may create conflicts of interest.

26.     Options, restricted stock units and restricted shares that have been awarded to and are held by Stemline's executive officers and directors will vest and be converted into the right to receive either the Merger Consideration or another amount. The treatment of these equity awards, in addition to benefits provided to executive officers through employment agreements or the Stemline Change in Control Severance Plan, will create a windfall for Stemline's executive officers that is unavailable to the common stockholders. As demonstrated in the following chart,

the executive officers of Stemline in total stand to receive up to $36 million if they are let go without "cause" or voluntarily leave for "good reason" after the Proposed Transaction closes:

| Name | Cash | Equity | Perquisites/ Benefits | Total |
|------|------|--------|-----------------------|-------|
| Ivan Bergstein | $3,654,027 | $12,275,438 | $12,738 | $15,942,203 |
| Kenneth Hoberman | $1,256,999 | $12,166,063 | $40,762 | $13,463,824 |
| David G. Gionco | $713,824 | $3,244,463 | $25,476 | $3,983,763 |
| Robert Francomano | $781,734 | $1,850,163 | $19,107 | $2,651,004 |

27.    The members of the Board and the executive officers stand to gain handsomely once the Proposed Transaction closes. In total, as demonstrated in the following chart, the executive officers and Board members will obtain more than $73.2 million:

| | Total Share Consideration | Total Option Consideration | Total RSU/Restricted Share Consideration | Total CVRs |
|------|------|------|------|------|
| **Named Executive Officers** | | | | |
| Ivan Bergstein | $23,486,462 | $4,889,439 | $11,293,403 | $3,652,092 |
| Kenneth Hoberman | $4,612,271 | $468,398 | $11,192,778 | $1,443,410 |
| David G. Gionco | $785,692 | $332,853 | $2,984,905 | $372,980 |
| Robert Francomano | $648,002 | $85,500 | $1,682,485 | $252,651 |
| **Directors** | | | | |
| Ron Bentsur | $336,272 | $465,366 | $426,708 | $151,450 |
| Darren Cline | $78,465 | – | $329,418 | $35,468 |
| Alan Forman | $703,720 | $239,680 | $311,708 | $146,298 |
| Mark Sard | $262,465 | – | $329,418 | $51,468 |
| Kenneth Zuerblis | $379,684 | – | $311,708 | $60,121 |

## C.  The Preclusive Deal Protection Devices

28.    As part of the Merger Agreement, defendants agreed to certain preclusive deal protection devices that ensure that no competing offers for the Company will emerge.

29.    By way of example, Section 5.3(a) of the Merger Agreement includes a "no solicitation" provision barring the Company from soliciting or encouraging the submission of an acquisition proposal.

30.     Despite already locking up the Proposed Transaction by agreeing not to solicit alternative bids, the Board consented to additional provisions in the Merger Agreement that further guarantee the Company's only suitor will be Menarini. For example, pursuant to Section 5.3(c) of the Merger Agreement, the Company must notify Menarini of any offer, inquiry, or proposal made by an unsolicited bidder. That includes the identity of any party making a proposal and the terms of that proposal. Thereafter, should the Board determine that the unsolicited offer is superior, Section 6.1(b)(i) requires that the Board grant Menarini four (4) business days to negotiate the terms of the Merger Agreement to render the superior proposal no longer superior. In other words, the Merger Agreement gives Menarini access to any rival bidder's information and allows Menarini a free right to top any superior offer. Accordingly, no rival bidder is likely to emerge and act as a stalking horse for Stemline, because the Merger Agreement unfairly assures that any "auction" will favor Menarini and allow Menarini to piggy-back upon the due diligence of the foreclosed second bidder.

31.     In addition, pursuant to Section 8.3(b)(i) of the Merger Agreement, Stemline must pay Menarini a termination fee of $25.4 million if the Company decides to pursue another offer, thereby essentially requiring that the alternate bidder agree to pay a naked premium for the right to provide the stockholders with a superior offer.

32.     Ultimately, these preclusive deal protection provisions restrain the Company's ability to solicit or engage in negotiations with any third party regarding a proposal to acquire all or a significant interest in the Company. The circumstances under which the Board may respond to an unsolicited written bona fide proposal for an alternative acquisition that constitutes or would reasonably be expected to constitute a superior proposal are too narrowly circumscribed to provide an effective "fiduciary out" under the circumstances. Likewise, these provisions also foreclose any

likely alternate bidder from providing the needed market check of Menarini's inadequate offer price.

### D. The Materially Incomplete and Misleading 14D-9

33.     The Individual Defendants must disclose all material information regarding the Proposed Transaction to Stemline stockholders so that they can make a fully informed decision whether to tender their shares in favor of the Proposed Transaction.

34.     On May 12, 2020, Defendants filed the 14D-9 with the SEC. The purpose of the 14D-9 is, *inter alia*, to provide the Company's stockholders with all material information necessary for them to make an informed decision on whether to tender their shares in favor of the Proposed Transaction. However, significant and material facts were not provided to Plaintiff and the Class. Without such information, Stemline stockholders cannot make a fully informed decision concerning whether or not to tender their shares in favor of the Proposed Transaction.

### *Materially Misleading Statements/Omissions Regarding the Management-Prepared Financial Forecasts*

35.     The 14D-9 discloses management-prepared financial projections for the Company which are materially misleading. The 14D-9 indicates that in connection with the rendering of PJT's fairness opinion, PJT reviewed "certain internal financial information concerning the business, financial condition and operations of Stemline prepared and furnished to PJT Partners by the management of Stemline" as well as "the Management Projections that were prepared by or at the direction of Management of Stemline." In connection with its fairness opinion, BofA reviewed "certain internal financial and operating information with respect to the business, operations and prospects of Stemline furnished to or discussed with BofA . . ., including certain financial forecasts relating to Stemline prepared by the management of Stemline." Accordingly, the 14D-9 should have, but failed to, provide certain information in the projections that Stemline's

management provided to the Board and PJT and BofA.

36.    Notably, Defendants failed to disclose stock-based compensation, which prevents stockholders from determining whether it has been deducted from EBITDA or unlevered free cash flows. In addition, the 14D-9 fails to disclose unadjusted projections, which would enable stockholders to model probability scenarios other than those estimated by management. The 14D-9 further fails to disclose the usable Tax Attribute Schedule as referred to on page 33, as well as the basis for projecting NOL carryforwards being utilized so slowly. This omitted information is necessary for Stemline stockholders to make an informed decision on whether to tender their shares in favor of the Proposed Transaction.

### Materially Incomplete and Misleading Disclosures Concerning PJT's Financial Analyses

37.    With respect to the *Discounted Cash Flow Analysis,* the 14D-9 fails to disclose the basis for selecting a range of after-tax discount rates of 12% to 14%. The 14D-9 further fails to disclose the actual unlevered free cash flows utilized by PJT in the analysis. While the 14D-9 states that management's projected unlevered free cash flows included cash savings associated with tax attributes, PJT utilized unlevered free cash flows that included NOL cash tax savings. To the extent that PJT's unlevered free cash flows differ from those provided in the management projections, those numbers must be disclosed. Disclosing the use of tax attributes in unlevered free cash flows is necessary because ordinarily NOLs would be fully utilized until exhausted with little to no tax payable. While the tax attributes seem to have a very modest impact on tax expense, this significantly impacts the after-tax cash flows used in the analysis.

38.    With respect to the *Selected Precedent Merger Analysis*, the 14D-9 fails to disclose the transaction values and multiples for each of the selected transactions.

39.     The 14D-9 fails to disclose the price targets as reviewed by PJT. The 14D-9 states that PJT reviewed the price targets by eight research analysts, discarded the high and low estimates and then discounted the remaining price targets to obtain a median of $11.25. The price targets listed on Bloomberg show that half of the targets are significantly higher than the Merger Consideration:

| Firm | Target Price |
| --- | --- |
| Cantor Fitzgerald | 10.00 |
| Wedbush | 11.00 |
| J.P. Morgan | 8.00 |
| Aegis Capital Corp. | 20.00 |
| Alliance Global Partners | 14.50 |
| Ladenburg Thalmann & Co | 41.00 |
| HC Wainwright & Co LLC | 18.00 |
| Piper Sandler & Co | 9.00 |

### Materially Incomplete and Misleading Disclosures Concerning BofA's Financial Analyses

40.     With respect to the *Discounted Cash Flow Analysis,* the 14D-9 fails to disclose the basis for using the discount rate range of 9.0% to 12.0%. The 14D-9 further fails to disclose the actual unlevered free cash flows utilized by BofA in the analysis. While the 14D-9 states that management's projected unlevered free cash flows included cash savings associated with tax attributes, BofA utilized unlevered free cash flows based on the management projections and tax attributes. To the extent that BofA's unlevered free cash flows differ from those provided in the management projections, those numbers must be disclosed. Disclosing the use of tax attributes in unlevered free cash flows is necessary because ordinarily NOLs would be fully utilized until exhausted with little to no tax payable. While the tax attributes seem to have a very modest impact on tax expense, this significantly impacts the after-tax cash flows used in the analysis.

41.     With respect to the *Selected Precedent Transactions Analysis*, the 14D-9 fails to disclose the transaction values and multiples for each of the selected transactions.

13

42.    The 14D-9 fails to disclose the price targets as reviewed by BofA. The 14D-9 states that BofA reviewed certain price targets set by research analysts, discarded the high and low estimates and then discounted the remaining price targets to obtain a range of $8.15 to $18.10 per share. The price targets listed on Bloomberg show that half of the targets are significantly higher than the Merger Consideration:

| Firm | Target Price |
|------|-------------:|
| Cantor Fitzgerald | 10.00 |
| Wedbush | 11.00 |
| J.P. Morgan | 8.00 |
| Aegis Capital Corp. | 20.00 |
| Alliance Global Partners | 14.50 |
| Ladenburg Thalmann & Co | 41.00 |
| HC Wainwright & Co LLC | 18.00 |
| Piper Sandler & Co | 9.00 |

### *Materially Incomplete and Misleading Disclosures Concerning the Flawed Process*

43.    The 14D-9 also fails to disclose material information concerning the sales process.

44.    Stemline and Party A had held discussions about partnership and commercial opportunities since 2018. The 14D-9 notes that on February 27, 2020, the Board was updated on a potential stock-for-stock combination with Party A. Yet the 14D-9 states that Party A did not indicate interest in a potential stock-for-stock combination until March 3, 2020. The 14D-9 fails to disclose whether, before March 3, 2020, Stemline was considering approaching Party A about a potential combination, any discussions had taken place about a potential combination between Stemline and Party A, and how long Stemline had considered a potential combination with Party A.

45.    At least twice during the sales process, members of management engaged in discussions with some, not all, members of the Board about an important issue. According to the 14D-9, Kenneth Hoberman, Chief Operating Officer, contacted BofA about acting as Stemline's

14

financial advisor "after informal discussions with members of the Stemline Board." The 14D-9 does not disclose which members of the Board were involved in the informal discussions, how BofA was suggested, and why the whole Board did not discuss and decide on approaching BofA. Similarly on April 12, 2020, Individual Defendant Bergstein and Kenneth Hoberman contacted some, not all, members of the Board about a discussion with Party A. Those members did not believe the Company should delay entering into an exclusivity agreement with Menarini as Party A "would likely not be able to provide comparable value or certainty" as the Proposed Transaction would. However, the 14D-9 does not disclose which Board members had been contacted, which Board members were involved in the discussions, and whether there were other Board members who did not agree about the prospects of a transaction with Party A.

46.     The financial projections included in the 14D-9 were approved by the Board on March 31, 2020. The 14D-9 does not disclose whether those projections were provided to either Party A or Menarini before the Company entered into the Merger Agreement.

47.     On April 8, 2020, the Board discussed interactions with Party A and "other potential counterparties." The 14D-9 does not disclose how many other parties were interacting with Stemline, the status of those interactions as of April 8, 2020, or the kinds of transactions being considered with those interactions.

48.     The 14D-9 notes that PJT and BofA provided the Board with preliminary financial information relating to Stemline on April 3, 2020. The 14D-9 fails to disclose this preliminary financial information. On April 8, 2020, according to the 14D-9, Company management reviewed Menarini's April 7, 2020 proposal "with the assistance of the legal and financial advisors." Yet the 14D-9 does not disclose whether that review included financial analyses conducted by PJT and/or BofA.

49.     On May 3, 2020, the Board received an update from Stemline's litigation counsel on "ongoing litigation matters." The 14D-9 does not disclose the kind of litigation matters that were discussed, their potential impact on the Proposed Transaction or the Merger Consideration, or the Proposed Transaction's potential impact on those litigation matters.

50.     The 14D-9 fails to disclose crucial information concerning potential conflicts of interest on the part of PJT and BofA. For example, representatives of PJT had discussions with the CEO of Menarini about potential acquisition targets, including Stemline. PJT approached Stemline on Menarini's behalf, and Stemline and Menarini agreed to interact through PJT. Yet Stemline decided to retain PJT to provide financial analyses and an opinion as to the fairness of a transaction with Menarini. The 14D-9 fails to disclose whether the PJT representatives who held discussions with Menarini or approached Stemline on Menarini's behalf were later involved in preparing the fairness opinion. The 14D-9 also fails to disclose the extent of the relationship between PJT and Menarini before PJT was retained by Stemline. Finally, the 14D-9 states that PJT will receive additional compensation when the Proposed Transaction closes, and that additional compensation is based upon a formula, as is additional compensation when the CVR payments are made. BofA's compensation is "estimated," inferring that BofA's compensation is also subject to a formula. Yet the 14D-9 does not disclose the formula for the additional compensation for either BofA or PJT, nor does the 14D-9 disclose when BofA and PJT agreed to such a compensation structure. Finally, the 14D-9 states that BofA provided investment and corporate banking services to Stemline, Menarini and its affiliates, but does not disclose what services were provided and when they were provided.

51.     This information is necessary to provide Company stockholders a complete and accurate picture of the sales process and its fairness. Without this information, stockholders were

not fully informed as to the defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process. Additionally, because of the potential conflicts of interest suffered by the financial advisors, stockholders cannot be sure as to the advisors' objectivity and therefore cannot decide what credence, if any, to give to the fairness opinions provided by the advisors to the Board, opinions that were in turn relied upon by the Board in recommending the Proposed Transaction to stockholders. And without all material information, Stemline stockholders are unable to make a fully informed decision in connection with the Proposed Transaction and face irreparable harm, warranting the injunctive relief sought herein.

52.     In addition, the Individual Defendants knew or recklessly disregarded that the 14D-9 omits the material information concerning the Proposed Transaction and contains the materially incomplete and misleading information discussed above.

53.     Specifically, the Individual Defendants undoubtedly reviewed the contents of the 14D-9 before it was filed with the SEC. Indeed, as directors of the Company, they were required to do so. The Individual Defendants thus knew or recklessly disregarded that the 14D-9 omits the material information referenced above and contains the incomplete and misleading information referenced above.

54.     Further, the 14D-9 indicates that on May 3, 2020, PJT and BofA reviewed with the Board their financial analyses of the Merger Consideration and delivered to the Board their oral opinions, which were confirmed by delivery of written opinions of the same date, to the effect that the Merger Consideration was fair, from a financial point of view, to Stemline stockholders. Accordingly, the Individual Defendants undoubtedly reviewed or were presented with the material information concerning PJT and BofA's financial analyses which has been omitted from the 14D-9, and thus knew or should have known that such information has been omitted.

55.     Plaintiff and the other members of the Class are immediately threatened by the wrongs complained of herein, and lack an adequate remedy at law. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that the Company's stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I

**On Behalf of Plaintiff and the Class Against All Defendants for Violations of Section 14(e) of the Exchange Act and Rule 14d-9**

56.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

57.     Defendants have filed the 14D-9 with the SEC with the intention of soliciting Stemline stockholder support for the Proposed Transaction. Each of the Individual Defendants reviewed and authorized the dissemination of the 14D-9, which fails to provide the material information referenced above.

58.     In so doing, defendants made materially incomplete and misleading statements and/or omitted material information necessary to make the statements made not misleading. Each of the Individual Defendants, by virtue of their roles as officers and/or directors of Stemline, were aware of the omitted information but failed to disclose such information, in violation of Section 14(e).

59.     Section 14(e) of the Exchange Act provides that it is unlawful "for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading. . . ." 15 U.S.C. § 78n(e).

60.     Specifically, and as detailed above, the 14D-9 violates Section 14(e) and Rule 14d-9 because it omits material facts concerning: (i) management's financial projections; (ii) the value of Stemline shares and the financial analyses performed by PJT and BofA in support of their fairness opinions; (iii) potential conflicts of interest suffered by the advisors; and (iv) the sales process.

61.     Moreover, in the exercise of reasonable care, the Individual Defendants knew or should have known that the 14D-9 is materially misleading and omits material information that is necessary to render it not misleading. The Individual Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction; indeed, the 14D-9 states that PJT and BofA reviewed and discussed their financial analyses with the Board on May 3, 2020, and further states that the Board considered PJT and BofA's financial analyses and fairness opinions material in connection with approving the Proposed Transaction. The Individual Defendants knew or should have known that the material information identified above has been omitted from the 14D-9, rendering the sections of the 14D-9 identified above to be materially incomplete and misleading.

62.     The misrepresentations and omissions in the 14D-9 are material to Plaintiff and the Class, who will be deprived of their right to make an informed decision whether to tender their shares if such misrepresentations and omissions are not corrected prior to the end of the tender offer. Plaintiff and the Class have no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff and the Class be fully protected from the immediate and irreparable injury that defendants' actions threaten to inflict.

## COUNT II

**On Behalf of Plaintiff and the Class against the Individual Defendants for Violations of Section 20(a) of the Exchange Act**

63.    Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

64.    The Individual Defendants acted as controlling persons of Stemline within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Stemline and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

65.    Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to the time the 14D-9 was filed with the SEC and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

66.    In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The omitted information identified above was reviewed by the Board prior to voting on the Proposed Transaction. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the 14D-9.

67.     In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The 14D-9 purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

68.     By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

69.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(e) and Rule 14d-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff and the Class will be irreparably harmed.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff demands injunctive relief in his favor and in favor of the Class and against the defendants jointly and severally, as follows:

A.      Declaring that this action is properly maintainable as a class action and certifying Plaintiff as class representative and his counsel as class counsel;

B.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from filing any amendment to the 14D-9 with the SEC unless and until defendants agree to include the material information identified above in any such amendment;

C.      Preliminarily and permanently enjoining defendants and their counsel, agents, employees and all persons acting under, in concert with, or for them, from proceeding with,

consummating, or closing the Proposed Transaction, unless and until defendants disclose the material information identified above which has been omitted from the 14D-9;

D.     In the event that the transaction is consummated prior to the entry of this Court's final judgment, rescinding it or awarding Plaintiff and the Class rescissory damages;

E.     Directing the defendants to account to Plaintiff and the Class for all damages suffered as a result of their wrongdoing;

F.     Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and expert fees and expenses; and

G.     Granting such other and further equitable relief as this Court may deem just and proper.

### JURY DEMAND

Plaintiff demands a trial by jury.

Dated: May 22, 2020

**OF COUNSEL:**

**ROWLEY LAW PLLC**
Shane T. Rowley
Danielle Rowland Lindahl
50 Main Street, Suite 1000
White Plains, NY 10606
Telephone: (914) 400-1920
Facsimile: (914) 301-3514

**RIGRODSKY & LONG, P.A.**

By:  */s/ Gina M. Serra*
     Brian D. Long (#4347)
     Gina M. Serra (#5387)
     300 Delaware Avenue, Suite 1220
     Wilmington, DE 19801
     Telephone: (302) 295-5310
     Facsimile: (302) 654-7530
     Email: bdl@rl-legal.com
     Email: gms@rl-legal.com

     *Attorneys for Plaintiff*